# Chesapeake & O. Ry. Co. v. Caudill.

(Decided Oct. 8, 1937.)

LEWRIGHT BROWNING and KIRK & WELLS for appellant.

FRED MEADE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This case is before us on an appeal from a judgment in favor of the appellee for $800, found and awarded him by the jury's verdict as "temporary damages" for injury to his house and land, allegedly caused by its overflow, resulting from the negligence of defend-

ant in the construction and repair of its railway trestle, erected across Jennie's creek.

The appellee is the owner of two tracts of land containing approximately 100 acres, situated on the waters of Jennie's creek in Johnson county, Ky., through which this creek runs and upon one of which is located his two-story frame dwelling, the basement of which is here claimed to have been damaged by the creek's overflowing of it during its flood stage, occurring in the spring of 1935.

This eight-room house is constructed with a concrete basement, measuring 28 feet square, which serves as a foundation for the house and is also used for the installation therein of the furnace and as a storage place for housing the family's garden truck and other provisions.

About 1,500 feet below this dwelling runs one of the defendant's branch railway lines, originally owned and so constructed by the Big Sandy & Kentucky River Railway Company, prior to its acquisition by appellant in 1930, as to diagonally cross Jennie's creek on a wooden trestle, extending for a distince of some 100 feet. This trestle, erected in its type and construction the same as was then and is now generally used by small branch railway lines for their extension over lowlands and creeks, was built in 1913, as stated, by the Big Sandy & Kentucky River Railway Company as an integral part of its railway line, and has since been maintained as a permanent part of its line by it and later the defendant, its successor in title, in practically the same form and type of railway trestle work in which originally constructed.

Every five or six years of this more than twenty-year period since thus constructed, this wooden trestle has, due to the rottening of its supporting timber pilings, and other natural deterioration, been repaired and strengthened, when deemed needful because of its impaired condition, by the driving down of new piles across the creek near to and alongside the old ones supporting the trestle's superstructure of ties and rails, which latter, or old pilings, were, on the completion of such repair work of substituting new piling support in lieu of the old, removed as being a needless obstruction to the flow of the stream, thereby leaving the trestle restored to its original structural form and condition of having but single rows of supporting bents.

In the early spring of 1935, some 4 acres of appellee's land and the basement of his house, it is complained, were flooded and injured by an unprecedented high backwater and overflow of Jennie's creek, then occurring during a season of heavy rains, when plaintiff, conceiving that he had been injured thereby as having been caused by the negligence of defendant in its construction and repair of this trestle, brought this action charging that the overflowing and flooding injury to his property by the swollen tide and backwater of the stream resulted from and was caused by the appellant's negligent construction and careless repairing of its trestle, for which he sought $1,500 as consequent damages.

By his petition plaintiff pleaded that this wooden trestle was originally constructed as a temporary structure, which had been originally negligently constructed, due to the way in which its supporting pilings or bents had been driven, not flush with, but diagonally crosswise the channel of the creek, in such manner as to needlessly and wrongfully obstruct its flow in times of high water, by catching and banking up the debris washed against it, and also that the 1935 repair work early that year negligently made by the defendant upon this trestle structure, as stated supra, or the replacement of its old piling with new, was responsible for plaintiff's resulting injury to his property from the creek's overflow, in that same was directly caused by the defendant's negligence in failing to duly remove the old piling from out the creek, after installing the new, when it was no longer required as a support for its trestle, and that the old piling, carelessly left standing in the stream after being replaced by new, only operated to further impede and clog up the flow of the creek.

Plaintiff further alleged that ever since the trestle was constructed, due to defendant's negligence in its original plan of placing the trestle's supporting pilings diagonally across the creek and so very close together, it or its supporting pilings had needlessly obstructed the flow of the stream's waters, in that there was not sufficient space left between these pilings to allow free passage of the creek's swollen waters during seasons of heavy rain; that as the result of this negligent construction, during periods of heavy rain, the dirt and debris washed down from the lowlands banked up against the pilings, forming a dam, which caused the waters of the creek to back up and overflow the adjoining lands; that

due to such long existing condition, the creek's bed had become so filled and raised that, during this last period of ordinary heavy rains, the high water arose to an unprecedented high stage, overflowing plaintiff's adjoining lands, causing the resulting injury sued for. Further he alleged that such condition of the creek's obstruction was yet further greatly aggravated, and its injurious effect much increased during the period of this 1935 high water, by reason of the repair work which the defendant company had, about the first of that year, undertaken to make upon its trestle by driving in new extra supporting piles in rows parallel with and next to the old ones, and looking to the latter's replacement by them when installed, but which old piles, plaintiff alleged, had not been then removed, but negligently left standing unduly long, after the installation of the new piling and its completion of the repairs, with the result that the stream was doubly choked and obstructed by the presence therein of these two or double rows of piles left temporarily standing in the creek; that the trestle was a temporary structure while in such condition and while so doubly obstructing and preventing the passing of the waters of the creek and its debris, etc., which there lodged and formed a dam which backed up the waters of the creek to such an unprecedented quantity and height as to result in their overflowing and injuring plaintiff's property.

Plaintiff, upon such alleged factual basis for his cause of action, alleges and contends that this temporary condition of the trestle, so arising from the negligence of the defendant in failing to remove the old piles, constituted it for such time and to such extent a then temporary structure, which caused the overflowing of his land and basement of his house, resulting in the injury here complained of.

Appellant's defense denied that this trestle was ever a temporary structure, and it affirmatively pleaded that it was always a permanent one, so originally built and since, throughout the long period of its daily use, maintained as such, and that, being a permanent structure built and so maintained for more than twenty years, plaintiff's alleged claim for injury, if any, here sued for as caused thereby, arose upon the trestle's original completion and was barred by the five-year statute of limitations (Ky. Sts. sec. 2515). Further it pleaded that the present damage complained of by plaintiff, if any,

was caused by extraordinary rains or floods, which could not have been anticipated by persons of ordinary experience and prudence and also pleaded the defense of plaintiff's charged contributory negligence.

The affirmative allegations of these answers were by plaintiff's reply expressly controverted and he again by this reply expressly denied defendant's trestle was a permanent structure and again affirmatively pleaded that the structure, here causing his injury, was a temporary one.

Upon the trial of the case upon the issues thus joined upon the pleadings, plaintiff introduced no evidence whatever tending to show the extent of his injury and damage, when limited to the proper measure therefor, as instructed by the court, which was the diminution in the value of the use of his property by reason of its overflow, allegedly caused by defendant's negligence in its construction of a temporary structure, or its temporary repairs. Here the plaintiff contended the trestle was a temporary one and was therefore limited to showing, by such measure of damages, the amount thereof. Notwithstanding this, all the evidence introduced by him was directed, not to showing or fixing the amount of this temporary damage, for which, by his pleading, he was only entitled to recover, but to showing his damages suffered as if caused by a permanent structure, the different measure of which is the market value of the property immediately before and immediately after its injury by overflow.

As stated supra, the issue in this case was as to whether the trestle of the defendant company, alleged to have caused the injury to plaintiff, was a permanent or a temporary one, or, again, whether the defendant's alleged negligent repair of the trestle in leaving the old pilings standing in the creek, after completing the work, made it, the trestle, while in that condition of having a needless, extra piling support, a temporary structure, which was alleged to have caused the injury to plaintiff's property.

The court at the close of the evidence gave, among others, the following instructions:

"No. 2. If the jury find for the plaintiff they should award him such sum in damages as they may believe from the evidence will fairly and reasonably compensate him for the difference, if any, between

the fair market value of the property immediately before the repair of said bridge and alleged injury and immediately after such repair and injury, not to exceed Fifteen Hundred Dollars, if you find the structure is permanent. If you find from the evidence that the structure is temporary, you will find the difference, if any, between the fair and reasonable value of the use of the property from October 26, 1935, running back not more than five years from said date.

"No. 3. If the jury believe from the evidence that the improvement and repair made by the defendant that caused the injury complained of, if it did cause it, as set out in Instruction No. 2, is permanent and the cause that produced the overflow, if any, cannot be remedied at a reasonable expense, then the measure of damages, if any, is the diminution in the market value of said land as set out in instruction No. 2.

"On the other hand, if the improvement and repair complained of was only intended for temporary purposes, or the cause that produced the overflow, if any, can be remedied or removed at a reasonable expense, then the measure of damages, if any, to which the plaintiff is entitled, is the diminution in the value of the use of the property as set out in instruction No. 1.

"The jury will say in their verdict whether they award damages for a permanent or a temporary injury."

Appellant complains of these instructions as prejudicially erroneous, in so far as they permit the jury to find temporary damages for plaintiff, for the reason, it contends, that they were supported by no evidence tending to fix the amount of plaintiff's temporary damage caused by the alleged temporary structure, which is confined, by the proper measure of damage in such case, as by the court instructed, to fixing the amount of diminution in the value of owner's use of the property when so damaged.

We conceive this ground of objection to the court's giving of this instruction, permitting recovery of temporary damages, where unsupported by any evidence tending to fix its amount, is meritorious, and should be sustained.

The rule is well settled that an instruction should not be submitted on an issue that is entirely unsupported by evidence or reasonable inferences therefrom, although the issue may have been made in the pleadings (Major Taylor & Co. v. Harding, 182 Ky. 236, 206 S. W. 285), as an instruction must be based on some evidence as well as on the pleadings. Black Mountain Corporation v. Webb, 228 Ky. 281, 14 S. W. (2d) 1063; City of Prestonsburg v. Mellon, 220 Ky. 808, 295 S. W. 1064, 1066; Rockcastle Gas Co. v. Horn, 241 Ky. 398, 44 S. W. (2d) 273; Damron v. Stewart & Weir, 253 Ky. 394, 69 S. W. (2d) 685; Owensboro Wagon Co. v. Boling, 107 S. W. 264, 32 Ky. Law Rep. 816; Paducah Traction Co. v. Walker's Adm'r, 169 Ky. 721, 185 S. W. 119.

In enunciating this rule in the Mellon Case, supra, we said:

"The evidence as to the amount of damage was based upon the theory that the draintile was a permanent structure. We find no evidence in the record as to damages except the difference between the value of the property before the draintile was constructed and the value of the property thereafter. As the evidence was directed to the establishment of the difference in the value of the property before and after putting in of the draintile, it does not appear that an instruction should have been given on the question of temporary injury."

Also, in the case of Chesapeake & O. R. Co. v. Friend, 227 Ky. 676, 13 S. W. (2d) 1021, the court said, to like effect:

"Neither he [plaintiff] nor any other witness attempted to fix the diminution in value of use of the premises due to the overflow, or even to describe the inconvenience and discomfort incident thereto. We find all that the evidence shows is that the lot was overflowed. * * * In the absence of more specific evidence, all that the jury could do was to guess as to the amount of damages. It is at once apparent that the evidence is too vague and uncertain to sustain a verdict of $400. Chesapeake & Ohio Railway Co. v. Blackburn, 188 Ky. 456, 222 S. W. 99."

In the instant case appellant's objection to the instructions is even more substantial, in that it is based, not on the contention that the evidence is too vague and

uncertain, but that there is no evidence whatever tending to show or fix the amount of damages allowable for an injury of this character, having been suffered because of a temporary structure, which was the basis or ground of complaint relied upon by plaintiff to recover damages.

In the case of Louisville & N. R. Co. v. Bennett, 196 Ky. 679, 246 S. W. 121, 122, the court laid down what appear to be very practical and sound rules to be followed in the matter of the introduction of evidence, and the proper instructions covering same, as to the proper measure and appropriate character of damages to be established and allowed in cases of this character, which are declared to be as follows:

> "(1) that a single recovery must be had for all damages resulting from a permanent structure properly built; (2) that for a structure unlawfully or negligently built, though intended to be permanent, recurring recoveries for such improper or negligent construction may be had as the injuries occur; (3) that for a temporary structure recurring recoveries may be had as the injuries occur; and (4) that whether the construction was negligent is a question for the jury under the evidence, if the same be conflicting. Madisonville, H. & E. Railroad Co. v. Graham, 147 Ky. 604, 144 S. W. 737. But there is yet another class of such cases, to which this belongs, recognized and accurately described in that opinion; and that is where the structures, though permanent and negligently constructed, cannot be repaired or remedied so as to avoid the recurring injuries, at a reasonable expense, or where the expense of repairing or remedying would be so great as to authorize the railroad company, in the exercise of its right of eminent domain, to condemn the property so injured by the negligent structure, then there must be a recovery once for all."

Now considering further the propriety of the appellant's criticism of the instructions here given, the plaintiff's evidence is that the cause of the overflow, resulting in the injury to his property complained of, was the present or temporary condition of the repair work on the trestle existing at the time it is claimed to have caused the overflow, or while left with a double row of pilings, which constituted it at such time a temporary

structure, for which temporary damages might be recovered for injury, if any, caused by it.

Such a situation and temporary condition appears to be recognized by the appellant as constituting itself a temporary structure, as it, in brief of counsel, concedes plaintiff's right to temporary damage suffered by reason of such temporary structure. The following quotation is from appellant's brief:

"But the presence of the old piling beneath the bridge, or rather the failure to remove such old piling, created a temporary condition, and any damage resulting therefrom was, of course, temporary in nature. But as pointed out in our original brief, no testimony was introduced which authorized or supported a finding for such temporary damages. All the testimony related to the measure of recovery for a permanent injury. It may be that a jury would have been authorized to make a finding of temporary damages if there had been any evidence introduced to support such finding, but in the absence of such evidence, it follows that the jury's verdict is without supporting testimony."

In view of our conclusion reached that the court erred in submitting this instruction where unsupported by any evidence, which error calls for the reversal of the judgment, we refrain from further extending our opinion by discussing other objections here raised by appellant and expressly reserve same, without expressing any opinion as to their merit.

Either party may, on return of this case, amend their pleadings as deemed needful for properly presenting and answering this action, when confined to this one issue or ground for recovery of temporary damages as arising from this temporary repair structure.

Judgment reversed, with direction to grant a new trial and for further proceedings consistent herewith.