## Louisville & N. R. Co. v. Laswell.

May 8, 1945.

C. S. Landrum, C. E. Rice, Jr., H. T. Lively, and E. R. Denney for appellant.

C. R. Luker for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellee, plaintiff below, owned a 235 acre farm in Rockcastle County, about 210 acres hill land, the balance bottom land, located on the east side of Roundstone Creek. For 40 years appellant has maintained a railroad on the west side of the creek, running parallel for a short distance. In 1927 appellant constructed a double track along the same line, over a fill of considerable height. In order to carry the water from the upper side it built a concrete culvert 4 feet wide, 4 feet high and 90 feet long. Water passing through the culvert found its way in a restricted manner from the former natural course, to Roundstone Creek. The culvert appears to have been built at near the level of the prior flow of the water under a trestle. This trestle was, and the culvert is directly opposite a portion of Laswell's bottom land.

Opposite to and northeast of the lower end of the culvert there is a sand bar which was there before the culvert was built in 1927. This has developed in size until it covers a portion of Laswell's low land. It is claimed that the development was caused by the more rapid flow of the water through the culvert. Ed Burnett is and was the owner of a strip of land lying between the company's right of way and Roundstone Creek, and opposite a portion of Laswell's land on the northeast.

In 1931 Burnett built a fence on the north and east sides of Roundstone Creek, running in part parallel with the course of the drain from the culvert and the creek. The portion running with the course of the drain was 53 feet in length. This fence is located below the point where the water empties into the creek; 38 feet of it is admittedly built on the company's right of way.

Laswell, who had owned his tract for more than 30 years, filed his petition in July 1943, alleging that the double track had been built "about 10 years ago," and had been used continuously by the railroad for railroad purposes since construction. He charged that in its construction the fill was widened, and the company built its culvert through the fill, increasing it in length, and as was "afterwards ascertained not wide enough for the free and natural flow of the water from the branch when there was heavy rainfall." The result was to force the water rapidly through the culvert creating a new water passage over his land, causing overflows and filling his field with debris to such an extent as to destroy its use. It was charged that the fill was built wider and in such a way as to gather more water above. He charged that said "railroad structure is temporary."

The facts relating to the building of the fence by Burnett, partly on the company's right of way, were set up in amended petition. The company in answer to the original petition admitted the building of the double track and culvert prior to 1927, but denied every other allegation. The amended petition alleged that "in addition to the damages heretofore set out," his land had been damaged by the erection of the fence by Burnett as stated above, and sought to hold the company liable for the "fence" damages on the allegation that the company had permitted it to be built or had built it.

This pleading brought amended answer to petition and answer to amended petition, in denial as before, and as to culvert, company pleading that it was a permanent structure, erected in a careful and prudent manner, prior to 1927, invoked the statute of limitation. In answer to amended petition it denied its allegations in toto. It is noted that Burnett was not made a party defendant. The cause was submitted on the question of

liability of appellant. The jury found for Laswell in the sum of $250.

Appellant, moving the court for appeal asks reversal on grounds: (a) That it was entitled to a peremptory instruction because: (1) Appellee's cause of action for damages, due to the maintenance of the fill and culvert, is barred by limitation. (2) Appellant is not liable for damages alleged to be due on account of the construction of the fence by Burnett. (3) Instructions given by the court were unauthorized, erroneous and prejudicial. (4) Counsel for appellee indulged in improper and prejudicial argument.

That the court should not have submitted to the jury the question of damages claimed to have been caused by the maintenance of the culvert and fill is obvious, as we read the testimony. In the first place there is no proof that the fill or culvert was the proximate cause of the alleged damage. This is evident from the testimony of appellee, and every witness who testified for him on this point.

The other reason why the court should not have submitted the question of culvert damage is that any action on this account was barred by limitation. The culvert was built more than 15 years prior to the suit. That the culvert is a permanent structure is beyond question. Appellee did not testify on this point. He addressed himself only to the probable cost of removing the fence, and the debris and settlings on his land. Other proof showed that to reconstruct the culvert according to Laswell's idea, or properly, would cost more than he claimed to be the value of his entire farm. A permanent structure of the character in question is one which "may not be readily remedied, removed, or abated at a reasonable expense, or one of a durable character evidently intended to last indefinitely, costing as much to alter as to build it in the first instance. * * * If a structure causing the injury or nuisance can be easily changed or repaired at reasonable expense, it [is] temporary." Kidd v. Jody, 290 Ky. 379, 161 S. W. 2d 606, 608. Where the recovery is sought for damages occasioned by a permanent structure properly built, as this one is shown to have been, the recovery must be once for all, and sought within five years from the date of the completion, or of the first injury, or from the

date when it became apparent that there would be resulting injuries from the building of the structure. Laswell in his pleading alleged that "some time after he became the owner of the property he notified the defendant of the aforesaid defect in the culvert, and of the danger to his premises." Under our opinion in Chesapeake & O. R. Co. v. Salyer, 272 Ky. 171, 113 S. W. 2d 1152, and cases cited, action for and alleged damage caused by the culvert was barred.

Appellee plead that the structure causing damage was temporary. This was true as to the fence erected on the company's right of way, and Burnett's land. This fence, of course, could be removed at reasonable cost. Whether the company should be required to restore by removal of the deposits is another question. We find no case holding that in addition to damage for depriving one of the use or reasonable rental value of the land damaged, there must be restoration.

The contention that the court should not have submitted to the jury the matter of damages occasioned by a temporary structure is well taken. There was a total lack of proof either as to the rental value or loss of use. The measure of damages caused by a temporary structure is not the fair market value of the land prior to and after the injury, but the dimunition in the value of the use of the property, or its rental value. City of Richmond v. Gentry, 136 Ky. 319, 124 S. W. 337, 136 Am. St. Rep. 255; Chesapeake & O. R. Co. v. Salyer, supra; Chesapeake & O. R. Co. v. Caudill, 270 Ky. 107, 109 S. W. 2d 20. In the absence of proof on this point the court should not have submitted the issue.

We cannot agree with appellant that it was not liable for damages, if any, caused by so much of the fence as was erected on the company's right of way. The argument is based on the contention that Burnett built the fence on its right of way without having the written consent of the proper officer of the company, under its rules. In the amended petition which charged that the company had erected the fence, there was general denial without affirmative pleading. The original pleading alleged that the fence had been built and maintained by Burnett with the consent, knowledge and acquiescence of appellant.

The cases cited by appellant in support of its con-

tention are not in point. Reliance is placed on Morris v. Roberson, 137 Ky. 841, 127 S. W. 481, 136 Am. St. Rep. 323, in which it was written that where the owner of a shop leased it to a blacksmith, who in the conduct of his business created a nuisance, the tenant and not the landlord is liable. This ruling, by way of dictum, was perhaps based on the idea that the landlord had no control over the operation of a business by the tenant. This case is cited in J. E. M. Milling Co. v. Gaines, 231 Ky. 779, 22 S. W. 2d 274, where we held that the landlord is not liable for negligence of a tenant for injury caused by defective sidewalk. The distinction between those cases and this is clear. The question of control is a factor, and under the proof there is no doubt but that appellant had control of its right of way at all times.

The general rule is that a landowner is not liable for a nuisance on his premises, unless he creates it or it was created by some person for whose actions he is responsible, or unless he neglects to abate it within a reasonable time after it becomes such, or if he had exercised reasonable care, ought to have become aware of its existence. He must see that a nuisance created by his licensee is abated. He may be enjoined from permitting such persons to create a nuisance, and held liable when he permits them to do so. Inhabitants of Town of Rockport v. Rockport Granite Co., 177 Mass. 246, 58 N. E. 1017, 51 L. R. A. 779. A person is liable if he knowingly permits the creation or maintenance of a nuisance on his premises. Hollis v. Kansas City, Mo., Ret. Merchants' Ass'n, 205 Mo. 508, 103 S. W. 32, 14 L. R. A., N. S., 284; Southern R. Co. v. Com., Ky., 101 S. W 882, 12 L. R. A., N. S. 526; Huber v. Com., Ky., 102 S. W. 291.

While the evidence is scant on the subject, Burnett said that he had permission from the company's supervisor to use its property, and it is obvious that its officers and agents knew of the building of the fence, or its maintenance in such a way as to cause some damage to adjacent property. It would be no defense to show that Burnett had not obtained written consent from some certain officer of the company as provided in its rules. The consent in writing could have been waived and was so if the appellant knew, or could have known by the exercise of ordinary care, of the way in which its property was being used.

Appellee sued for $3,000; the verdict was for $250; it could hardly be conceived that the jury was influenced, biased or prejudiced by the claimed improper argument of counsel for plaintiff. The motion for appeal is sustained, judgment reversed and the case remanded for new trial consistent with this opinion.