**Linda J. WILLIAMS, Plaintiff–Appellant,**

v.

**SCHULLER INTERNATIONAL, INC., Johns Manville International Corp., Defendants–Appellees,**

No. 00–3614.

United States Court of Appeals, Sixth Circuit.

Feb. 5, 2002.

Before JONES, NELSON, and DAUGHTREY, Circuit Judges.

NELSON, Circuit Judge.

This is a Family and Medical Leave Act case in which the plaintiff appeals from a summary judgment that was entered in favor of her employer on statute-of-limitations grounds. The suit was timely if the alleged violations were willful, and it was not timely otherwise. We conclude that there are genuine issues of material fact as to willfulness, and we shall therefore vacate the challenged judgment.

I

The plaintiff, Linda Williams, began working for defendant Schuller International, Inc., in 1983. She remained in the employ of that company and its successor in interest, defendant Johns Manville International Corporation, until the series of events described below.

Ms. Williams' mother died on October 28, 1995, and Ms. Williams claims to have experienced an "acute situation and depression reaction" as a result. For whatever reason, she began missing work with some frequency.

On November 6, 1995, Ms. Williams called Eldridge Smith, the employee relations supervisor at the company, and asked him for permission to take leave. Mr. Smith's responsibilities at the company included administration of the Family and Medical Leave Act. During his deposition, Smith testified that he was aware that Ms. Williams' request for leave potentially fell within the act. He denied the request, however, because he thought the stated reasons—reasons he summarized as Ms. Williams' not wanting to come to work and having difficulty sleeping—did not qualify her for protection under the act.

Ms. Williams was absent from work for several days after the denial of her request, and she called in sick from time to time. On November 10, 1995, she visited her physician's assistant, Stephen Thomas. Thomas thought that she appeared very depressed, and he recommended medication.

Ms. Williams returned to work on November 17, 1995, and she continued to report for duty until November 22, 1995. At that time Joan Martin, an in-house nurse, referred her to a company doctor. In her referral, Nurse Martin wrote: "(mother died—needed time off) Counseling?"

Ms. Williams was seen on November 22, 1995, by the company doctor, Donald Doneff. Dr. Doneff concluded that she was not fit to work that day. He also noted that she was having a grief reaction and recommended that she visit her own doctor.

On November 24, 1995, Ms. Williams again saw her physician's assistant. He continued to treat her for depression. On the same day Ms. Williams called Nurse Martin and left a recorded message saying that she had been put on medical leave by her doctor. This message was subsequently reflected in two entries in company records: (1) a note in a handwritten log stating "L. Williams will be off until further notice. Per J. Martin" and (2) a computerized absence record with Ms. Williams' name and the legend "MLOA [Medical Leave of Absence] until."

Ms. Williams performed no further work for the company. Nurse Martin called

her, as she testified at her deposition, on either November 27th or 28th and left a message on Ms. Williams' answering machine asking her to furnish a doctor's note. Ms. Williams brought in such a note on December 7, 1995, but Nurse Martin told her the note was deficient because it did not contain any dates. After having her doctor's office fill in the dates, Ms. Williams brought the note back to Nurse Martin the next day, December 8, 1995. On the same day, however, Ms. Williams received a letter from Mr. Smith, dated December 6, 1995, telling her that the company was discharging her for excessive absenteeism.

Ms. Williams brought suit against the company on December 4, 1998, almost three years after the date of her discharge. The district court entered a summary judgment in which the action was dismissed as untimely, and this appeal followed.

## II

The Family and Medical Leave Act allows an employee to take a total of 12 work weeks of leave during any 12 month period for a serious health condition that renders the employee unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(D). A serious health condition includes a mental condition that involves continuing treatment by a health care provider. 29 U.S.C. § 2611(11)(B).

■ The normal limitations period for an action by an employee against an employer under the Family and Medical Leave Act is two years. 29 U.S.C. § 2617(c)(1). If the employer engages in a willful violation of the act, however, the limitations period is three years. 29 U.S.C. § 2617(c)(2). Because Ms. Williams filed her complaint more than two years after the date of her discharge, the present lawsuit is barred by the statute of limitations unless there was a "willful violation."

The Family and Medical Leave Act provides no express standard for determining willfulness, but the Supreme Court has articulated such a standard in connection with other statutes. Under the Age Discrimination in Employment Act, for example, the Court, has held that a violation was willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 128–129, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). See also *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (adopting the *Thurston* standard for the two-tiered statute of limitations in the Fair Labor Standards Act).

Ms. Williams suggests that a lower standard is appropriate for cases arising under the Family and Medical Leave Act, but we see no reason why *Thurston's* test for willfulness should not be applicable in this context as well. See *Settle v. S.W. Rodgers Co., Inc.,* 182 F.3d 909, 1999 WL 486643,*3 (4th Cir.1999) (unpublished opinion) and *Sampson v. Citibank,* 53 F.Supp.2d 13, 19 (D.D.C.1999), where willfulness in violating the Family and Medical Leave Act was held to entail knowing or reckless disregard of the statute.

■ Applying the "reckless disregard" standard in the case at bar, the district court concluded that no reasonable jury could find the company's alleged violation of Ms. Williams' rights under the Family and Medical Leave Act to have been willful. We review this matter *de novo.* See *United Nat. Ins. Co. v. SST Fitness Corp.,* 182 F.3d 447, 449 (6th Cir.1999). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

We must, of course, view the evidence in the light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). (It would be difficult to stray from this requirement in the present case, the company having elected not to include a statement of facts in its brief on appeal.) Giving the plaintiff the benefit of all inferences that could reasonably be drawn in the plaintiff's favor, we conclude that there are factual issues which make summary judgment inappropriate here.

■ The threshold issue involves the adequacy and timing of the notice allegedly given by Ms. Williams. When a need for leave is not foreseeable, the Family and Medical Leave Act requires that the employee notify the employer as soon as practicable under the facts and circumstances of the particular case. Except in extraordinary circumstances, an employee should give the employer notice within one to two working days after learning of the need for leave. 25 C.F.R. § 825.303(a). The employee need not explicitly assert her rights under the statute, however, and the employer is expected to seek through informal means any additional information that may be required. 25 C.F.R. § 825.303(b); *Hammon v. DHL Airways*, 165 F.3d 441, 450 (6th Cir.1999).

In the case at bar the employer contends that Ms. Williams never adequately informed it that her absences were potentially covered by the act. Ms. Williams contends otherwise, asserting that she gave proper notice on three different occasions.

The first time, Ms. Williams says, was on November 6, 1995, when she spoke with Eldridge Smith. The sufficiency of this alleged notice was "highly doubtful," in the district court's view, because the plaintiff did not explain that her mother had just died and did not give any facts concerning her own medical condition. Ms. Williams responds that Smith knew of her mother's death because the company had sent her a sympathy card with a leave? Was the putative notice given as soon as practicable? Questions such as these are primarily questions of fact, it seems to us, not questions of law.

If it should ultimately be found that the plaintiff gave her employer timely notice of a claim for leave under the statute, we believe that there would be genuine issues as to whether the plaintiff's condition was in fact qualifying and whether the employer made reasonable efforts to evaluate the claim before deciding to fire the plaintiff. And if these issues too should be resolved against the employer, we cannot say at this juncture that it would not be open to a jury to find that the employer acted in knowing or reckless disregard of its statutory obligations. On the record before us, the statute-of-limitations issue is simply too fact-intensive to admit of summary disposition. See *Huffman v. United States*, 82 F.3d 703, 706 (6th Cir.1996).

Accordingly, the summary judgment entered in favor of the defendant is VACATED, and the case is REMANDED for further proceedings not inconsistent with this opinion.